IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| BAYADER FOODER TRADING, LLC, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 1:13-cv-02856 |
| v. ) | |
| ) | **District Judge Breen** |
| GREGORY L. WRIGHT, and ) | **Magistrate Judge Bryant** |
| WRIGHT FARMS 1 HAYMAKERS INC., ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

On reference to this Court for determination and/or report and recommendation is the emergency motion of the Plaintiff for immediate possession of collateral owned by Defendants. Following the setting of a hearing, a suggestion of bankruptcy was filed on January 3, 2014 and the case was administratively closed. On June 10, 2014, Plaintiff filed notice of lifting of the bankruptcy stay and this case was reopened. Following a hearing on June 25, 2014, the parties briefed their legal positions.

### Relevant History

Defendants are Gregory L. Wright and Wright Farms 1 Haymakers, Inc. ("Defendants"). Plaintiff is a commodities-trading business. In April of 2012, Plaintiff contracted with Defendants to provide 21,750 metric tons of alfalfa hay at $290 per metric ton and made a down payment to Defendant in the amount of $435,000. Plaintiff entered into other contracts to re-sell this hay to its customers as far away as the Mideast. However, Defendants provided no hay. Following a meeting with the attorney for the Defendants on July 19, 2012, Defendants were

provided a second opportunity to perform. Under the second agreement, Defendants promised to provide the $435,000 of hay to Plaintiff by July 30, 2013 so as to effectively reimburse Plaintiff Bayader its original down payment and additionally, the Defendants agreed to grant security interests to Bayader in certain items of equipment belonging to the Defendants in the event Defendants failed to perform by that deadline. That time passed and Defendant failed to provide the hay as required by this second agreement and, as well, Defendant did not return the $435,000. The Defendants also have not permitted Plaintiff to take possession of the items of collateral. Plaintiff states it has been forced to purchase hay on the world market to satisfy its obligations to its customers and as such has suffered losses of at least $1.1 million due to the increased price to cover.

## Analysis

In the motion before this Court, Plaintiff requests that the Court award immediate possession of the collateral to Plaintiff. Plaintiff has provided a proposed order granting its motion [D.E. 8-2].

In response, Defendants suggest the second contract allows them until September, 2014 to fulfill their contracted obligations. However, as Counsel for Plaintiff points out, Defendant Wright twice has contradicted that, and it does appear to the Court that the Mr. Wright has, in fact, conceded that the performance date in the reformed contract was not 2014. In his previous bankruptcy, he testified this new deadline was August 2013, and in this Court's hearing on June 25, 2014 the Defendant Wright testified this deadline was August 2013. Given his testimony, the Court specifically finds that this issue has been conceded by Defendants.

The remaining defense raised by Defendant is *force majeure* and is available to Defendants through paragraph (I) of the purchase agreement. It reads that sellers "shall not be responsible for delay in shipment of the goods or any part thereof occasioned by any Act of God, strike, lockout, riot or civil commotion, combination of workmen, breakdown of machinery, dire, or unforeseeable and unavoidable impediment to navigation, or any cause comprehended in the term 'force majeure.'"

Defendants here have claimed as defense two separate Acts of God -- a drought in 2012 and excessive rain in 2013. To be successful in this defense, Defendants must satisfy all of the following: (1) performance was impossible (2) the weather was unforeseeable and (3) they could not mitigate against the effects of the weather. *Bryan v. Spurgin*, 37 Tenn. 681, 685 (1958).

The first of these three elements is whether performance was impossible. Plaintiff introduced U. S. Department of Agriculture data on Tennessee alfalfa hay yields for 2012 and 2013 which reflect average to above average yields for both of these years. This is indicative of farmers in Tennessee successfully growing alfalfa at the time Defendant was not having success. During this Court's hearing, Plaintiff also called as a witness Mark Huffstetler, who grows hay on his farm some 15 miles from Defendants' farm. He testified that he was able to grow hay during this two-year period (2012 and 2013) and he called these yields "very adequate" and "certainly wasn't any less" than an average year. On the other hand, the Defendant points out his statement that he did not recall another year as dry as 2012 over his 30 years.

As to the second element – the weather was not so severe as to be unforeseeable – Plaintiff Bayader quotes the opinion testimony of the Defendant that his own definition of "excessive rain" would be at least once every three days (33%). According to the government

3

rain data introduced, the 2013 growing season had rain 35.8 % of the days and in 2014 so far 44.7% of the time. And given Defendant 33% opinion as average, Plaintiff argues these are the norm and are not unforeseeable. As to these two years, Mr. Huffstetler testified that he did not see much "drastically different" from other years and that farmers experience conditions like these year after year.

The third element – to the extent weather is problematic, Defendant could have mitigated its effects. This would entail hiring more people or leasing other land. The testimony of the Defendant was that he alone worked some 1,800 acres and used no help in 2012 or 2013, the years at issue. The Court specifically recalls him testifying about the exceptionally long hours he worked alone each day (4 a.m. to 12 p.m.). Additionally as mitigation of bad weather, the Defendant could have leased land in other locations. In fact, Defendant had informed Plaintiff beforehand that he planned to do so by leasing land in Illinois. However, this did not happen.

This Court found Mr. Huffstetler to be well qualified to provide testimony as a local farmer experienced in growing alfalfa hay and therefore gives significant weight to his testimony, along with the weather and crop production statistics provided.

The weather conditions facing Defendants during 2012 and 2013 were not such that other Tennessee farmers were failing to produce average or better alfalfa hay crops; that heavy rains (estimates of one every three days in 2013 and part of 2014 ) were not unforeseeable and finally, virtually no mitigation efforts were attempted by Defendants. As such, the Court finds that *force majeure* has not been established. None of the three *Bryan* categories are applicable here.

Accordingly, this Court reports that the Defendants have failed to provide Plaintiff the amount of hay required by their Purchase Agreement and that Defendants committed a material breach of Section 1 of the Purchase Agreement. Pursuant to the Security Agreement, Defendants' material breach of Section 1 of the Purchase Agreement constitutes a default. The Court concludes that Defendants have defaulted under the Security Agreement. As set forth in the Security Agreement, the parties agreed that upon default, Bayader shall have all of the rights, privileges, and remedies of a secured party under Tennessee law. Under Tennessee law and the Security Agreement, and based on Defendants' own admissions, Bayader has the right to take possession of the collateral.

Finally, a complete listing of said items of collateral, with identification numbers and approximate values, appear in the Plaintiff's Proposed Order [D.E.8-2] which the Magistrate Judge recommends for approval by the Court.

Respectfully submitted this 21st day of August, 2014.

**s/Edward G. Bryant**
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATIONS MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**