IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

BAYADER FOODER TRADING, LLC,

       Plaintiff,

v.                               No. 13-2856

GREGORY L. WRIGHT and
WRIGHT FARMS 1 HAYMAKERS, INC.,

       Defendants.
_____

ORDER OVERRULING DEFENDANTS' OBJECTIONS TO REPORT AND
RECOMMENDATION, ADOPTING REPORT AND RECOMMENDATION AND
APPROVING PLAINTIFF'S PROPOSED ORDER FOR ENTRY
_____

*INTRODUCTION*

Before the Court is the December 16, 2013 emergency motion for immediate possession of

collateral filed by the Plaintiff, Bayader Fooder Trading, LLC ("Bayader").  (D.E. 8.)  Pursuant to

an order of reference (D.E. 9), United States Magistrate Judge Edward G. Bryant entered a report

and recommendation on August 21, 2014,[1] recommending approval and entry by this Court of the

order submitted contemporaneously with the motion.  (D.E. 38.)  Objections to the report and

recommendation were timely filed by the Defendants, Gregory L. Wright and Wright Farms 1

Haymakers, Inc. (sometimes collectively referred to as "Wright"), to which Bayader responded.

*STANDARD OF REVIEW*

When objections are made to a magistrate judge's report and recommendation, "[t]he district

judge must determine *de novo* any part of the magistrate judge's disposition that has been properly

_____

        [1]This case was administratively closed on January 13, 2014 (D.E. 16) and reopened June
12, 2014 (D.E. 20).

objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.* "[T]he filing of an objection does not oblige the district court to ignore the report and recommendation; it requires the court to give fresh consideration to the finding objected to insofar as the objection impugns the integrity of the finding." *Fharmacy Records v. Nassar*, 465 F. App'x 448, 456 (6th Cir.), *cert. denied*, 133 S. Ct. 545 (2012).

## FACTUAL FINDINGS OF THE MAGISTRATE JUDGE

Bayader is a commodities-trading firm located in Dubai, United Arab Emirates. Wright is a third-generation hay farmer whose operation is located near the town of Dresden in northwest Tennessee. In April 2012, Wright contracted with Bayader to provide 21,750 metric tons of alfalfa hay for which Plaintiff made a down payment of $435,000. Bayader entered into other contracts to resell the hay to customers in the Middle East and elsewhere. No hay was shipped, however. Following a meeting on July 19, 2012, the parties entered into a second agreement, under which Wright promised to provide $435,000 in hay to Bayader by a date certain. The Defendants also granted Bayader a security interest in certain items of farm equipment. Again, the deadline passed without shipment. Nor was the amount paid for the hay returned. Based on Wright's material breach of the contract between the parties, Bayader seeks possession of the collateral, including two John Deere tractors, a hay cutter, two hay balers, an HTS rake, two trailers and two trucks.

## OBJECTIONS AND ANALYSIS

The Defendants have made numerous objections to the report and recommendation, which

the Court will address seriatim.[2]

1.  Defendants Delivered No Hay in 2012.

Wright objects to the magistrate judge's finding that it provided no hay in 2012. Defendants argue that they in fact had 21,000 metric tons of hay ready to ship to Bayader. It is averred that, although they grew only 1,600 110-pound bales of hay in 2012 and did not deliver that hay due to drought, they obtained the 21,000 metric tons from other farmers. According to Wright, they notified Plaintiff of the availability of the hay but Bayader failed to inspect the commodity pursuant to the agreement or pay shipping expenses.

The page of hearing testimony cited by the Defendants in support of their objection contained the following:

Q:      And your testimony today is that you grew 21,000 metric tons of hay?

A:      I had 21,000 metric tons ready to ship.

Q:      How did you get the other?

A:      I was going to get it from other farmers.

Q:      So it wasn't hay that you were growing but hay you were going to get from other farmers?

A:      Right.

---

[2]The Court notes that Bayader, in its response to the objections, proffered argument concerning whether there was consideration for the 2013 agreement. However, the magistrate judge made no reference to consideration and the Defendants, while mentioning in their objections as to another issue that no consideration was received for the second agreement, presented no argument on the question. Accordingly, there is no objection relating to consideration properly before the Court. *See Fields v. Lapeer 71-A Dist. Ct. Clerk*, 2 F. App'x 481, 482-83 (6th Cir. 2001) (the filing of vague, general or conclusory objections to a magistrate judge's report and recommendation is insufficient); *Seals v. Seals*, No. 2:14-cv-2058-JPM-cgc, 2014 WL 3592037, at *2 (W.D. Tenn. July 21, 2014) (same).

Q:       So your testimony was that you only grew 1600 bales in 2012?

A:       Right.

Q:       But you were going to get the balance from --

A:       Other --

Q:       -- other farmers?

A:       Yes.

(D.E. 31 at 46.)  The testimony suggests nothing more than that Defendants planned to get the hay required under the agreement from other farmers, but does not support a finding that they actually did so.  Thus, this objection is without merit.

2.       <u>Defendants Delivered No Hay in 2013.</u>

The report and recommendation stated that "time passed and Defendant[] failed to provide the hay as required by [the] second agreement" (D.E. 38 at 2).  Defendants again contend that the shipment was not made because Bayader failed to inspect available hay in accordance with the agreement.   In support of their position, Defendants point to Wright's testimony before the magistrate judge that he advised Plaintiff by email that the hay was ready for inspection.  Bayader points out, and Defendants do not deny, that the email to which Wright referred has never been produced.  However, the only relevant email before the Court, dated July 26, 2013 from Greg Wright to Bayader, states as follows:  "Yes I am aware of the deadline and we are still baling hay for this time and we are presently stopped due to rain but will restart after the front moves through, I will let you know when we are ready."  (D.E. 1-18 at 1.)  There is nothing in the record to indicate that Plaintiff was later advised that Wright was "ready."  Based on this evidence, the Court finds no error in the  magistrate judge's conclusion that Wright provided no hay in 2013.

3.     Wright Had until September 2014 to Deliver under the Second Agreement.

Wright objects to the magistrate judge's specific finding that Defendants conceded that their deadline for shipment under the reformed contract was August 2013.  In the hearing before the magistrate judge, Greg Wright was asked on cross-examination by his counsel, "After you entered into the new contract with them, what was your understanding of when you had to deliver the hay for 2013?"  (D.E. 31 at 64.)  He replied, "That I had until September of 2014 to get all the hay to them."  (*Id.*)  He was also asked by his attorney, "But, again, were you under the understanding that you were supposed to try and give them the down payment hay back . . . by August 31st, but under all circumstances, you had until September of 2014 to provide them all the hay?"  (*Id.* at 76.)  Wright responded in the affirmative.

However, he testified on direct examination that he met with representatives of Bayader in July 2012, during which he agreed that under the second contract he would provide $435,000 in hay by late summer 2013.  (*See* D.E. 31 at 49.)  He further confirmed that he understood that, pursuant to the agreement's terms, if he failed to provide the hay to Bayader by late summer 2013, he could lose the farm equipment.  (*See id.* at 50-51.)

Moreover, the second agreement entered into by the parties clearly stated that the hay for which Bayader had paid $435,000 pursuant to the initial contract and with respect to which it took a security interest in Wright's farm equipment was to be provided by August 31, 2013.  (*See* D.E. 36-1 at 2.)  Indeed, Section 1 thereof bears the heading "Obligation to Provide Hay by August 31, 2013."  (*Id.*)  While he was on the witness stand, counsel for Plaintiff on redirect examination took Greg Wright through the provisions of the contract and concluded with the following question:  "So under the purchase agreement that you signed on behalf of yourself and Wright Farms, your

obligation was to provide about 1500 tons plus about 3600 tons, which is about 5200 tons by August 31st, 2013, correct?" (D.E. 31 at 75.) Wright responded, "Yes." (*Id.*)

Furthermore, the magistrate judge found that, in a previous bankruptcy proceeding, Greg Wright testified that his deadline for performance under the second contract was August 2013. This factual finding by the magistrate judge has not been challenged.

Despite the Defendants' assertion that Greg Wright's testimony on cross-examination was merely a "clarification" of his understanding of his obligations, he made multiple, and contradictory, statements that his performance under the modified contract was due in 2013 rather than 2014. Accordingly, the magistrate judge's finding that Defendants had conceded the correctness of the 2013 date does not constitute error.

4. <u>Force Majeure Clause.</u>

In their response to the Plaintiff's motion, Defendants averred that, pursuant to the purchase agreement, the parties were in accord that force majeure would excuse or prevent a default on Wright's part occasioned by an act of God. Defendants identified two acts of God -- the 2012 drought and excessive rain in 2013 -- that excused their nonperformance.

A force majeure provision in a contract "defines the scope of unforeseeable events that might excuse nonperformance by a party." *Stand Energy Corp. v. Cinergy Servs., Inc.*, 760 N.E.2d 453, 457 (Ohio Ct. App. 2001). In Tennessee, an unforeseen event that causes impossibility of performance of a contract may be used as a defense. *Silsbe v. Houston Levee Indus. Park, LLC*, 165 S.W.3d 260, 265 (Tenn. Ct. App. 2004). In determining whether the defense applied, the magistrate judge relied on *Bryan v. Spurgin*, 37 Tenn. 681 (5 Sneed) (1858[3]) in setting out three elements to

_____

[3]The magistrate judge miscited the case as decided in 1958.

be satisfied by Wright, to wit:  (1) performance must have been impossible; (2) the weather must have been unforeseeable; and (3) Defendants could not mitigate against the effects of the weather.[4] According to the report and recommendation, none of these elements weighed in favor of Wright. The burden borne by one asserting an act of God defense is a heavy one.  *Cenac Towing Co., Inc. v. Southport, L.L.C.*, 232 F. App'x 929, 932 (11th Cir. 2007);  *In re Katrina Canal Breaches Consol. Litig.*, Civ. Action No. 05-4182, 2011 WL 1792542, at *20 (E.D. La. Jan. 20, 2011).

In addressing the first element, the magistrate judge noted the introduction of United States Department of Agriculture (USDA) data submitted by the Plaintiff reflecting average to above average alfalfa hay yields in Tennessee in the years 2012 and 2013.  This, he found, indicated that Tennessee farmers were successfully growing alfalfa at a time when Wright was unsuccessful. Judge Bryant also took note of the hearing testimony of Bayader's witness Mark Huffstetler, a hay grower located some fifteen miles from Wright's farm, who stated that he was able to grow hay in 2012 and that his yields in 2013 were "[v]ery adequate" and "certainly [not] any less" than average years.  (D.E. 36-3 at 83-84.)

Wright points to his hearing testimony relative to 2013, in which he stated that, "It was a consistent rain.  Every three to four days it would consistently rain.  It didn't allow the ground time to get dry enough where we could even get in the field.  It was putting us behind." (D.E. 31 at 65.) Defendants also argue that USDA alfalfa production data for the entire state conflicted with documentation showing regional rainfall for northwest Tennessee (the "Rainfall Summary Table"

---

[4]Neither party has objected to the magistrate judge's analysis of the facts before him using the factors articulated in *Bryan*.

or the "Table"),[5] which reflected less rain in the region in 2012 compared to 2010-11 and 2013-14 and rainfall in 2013 exceeding that of the preceding three years. Huffstetler confirmed the existence of drought conditions in 2012, which resulted in an approximate one-third reduction in his ability to grow bermuda grass hay.[6]

Even if Wright succeeded in showing that performance was impossible due to the weather, he must also demonstrate that the meteorological events of 2012 and 2013 were unforeseeable. Defendants assert that they satisfied the second element, citing to Wright's hearing testimony and the Rainfall Summary Table. Wright claims that the forty-four days of rain documented on the Table for the period from May 1 through August 31 of 2013 were unforeseeable.

At the hearing, he defined excessive rain as "[a] consistent rain every three days and 2 to 5 inches of rain in one day, one 8-hour period." (*Id.* at 58.) Huffstetler, also a longtime farmer, testified that the weather in 2013, while rainy, was not as wet as 2014 and he "just [didn't] see it being that much drastic from other years." (*Id.* at 85.) Indeed, the Table indicated that northwestern Tennessee received forty-one days of rain for the same period in 2010 and thirty-eight wet days in 2014 with more than a month left to go in the growing season.[7]

---

[5]The Table contains a record of the rain days in Dresden for the period from May 1 through August 31 for the years 2010 through July 24, 2014. According to the hearing testimony, the growing season for alfalfa runs from May to late August/early September in this region.

[6]In objecting to the magistrate judge's finding as to the first element, Defendants also again rely on their assertion that they had 21,000 metric tons of hay ready to ship to the Plaintiff in 2012. The Court has already found that this contention is not supported by the evidence cited.

[7]*See Kennedy v. Union Elec. Co. of Mo.*, 216 S.W.2d 756, 763 (Mo. 1948) ("The term "Act of God," in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality afford no reasonable warning of them.").

Wright testified that he had never seen a drought as bad as the one in 2012. Huffstetler recalled other years with similar dry conditions, but could not recall when they occurred. According to the Table, there were twenty-six rain days in 2012 compared to forty-one in 2010, thirty-four in 2011, and forty-four in 2013.

While there is some evidence that the 2012 drought was unforeseeable, mitigation must also be established. The magistrate judge concluded that, despite any difficulties caused by the weather in 2012 and 2013, the Defendants failed to mitigate its effects. Wright, who is fifty-two years old, testified at the hearing that he farmed some 1,000 acres of alfalfa and 800 acres of other types of hay at seven locations in Weakley County, Tennessee. He described the work, which he did alone in 2012 and 2013, as cutting the hay, letting it cure, baling, placing it on a truck and transporting it to a warehouse, and going back into the field to apply fertilizer. This process was repeated every thirty days during the growing season, resulting in four cuts of hay each season. He further related that, during that period, he would begin at 4:00 a.m. seven days a week and continue until the work was done, which could be as late as midnight. He told Bayader that, in addition to land he leased in Tennessee, he would be leasing land in Illinois because the alfalfa there was about two weeks farther along in growth than that farmed in Tennessee. The lease would also, to an extent at least, help insulate him from weather problems closer to home. He claimed that the arrangement, which was not in writing, fell through when the owner of the Illinois acreage decided to farm the hay himself.

It was the opinion of the magistrate judge that Wright could have hired helpers or leased other land. Because he did not, the mitigation element had not been shown. In their objections, the Defendants argue only that they mitigated by verbally leasing the Illinois land. They offer no reason, however, why Wright did not hire someone to help him, as he eventually did in 2014, or

attempt to lease other land in Tennessee, Illinois or another nearby state. Therefore, Defendants' objections fall short of showing that the magistrate judge erred in concluding they failed to establish all three *Bryan* elements.[8]

## CONCLUSION

Upon *de novo* review of the objections to the magistrate judge's report and recommendation, the Court finds no basis for rejection or modification of the recommended disposition. Accordingly, the Defendants' objections are OVERRULED, the report and recommendation is ADOPTED and the Plaintiff's proposed order is approved for entry by the Clerk of Court.

IT IS SO ORDERED this 21st day of October 2014.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]The Defendants also challenge Judge Bryant's finding that Huffstetler was well-qualified to provide testimony as a local farmer experienced in growing alfalfa, since he did not grow that type of hay during the relevant time period and used different equipment. However, even if this Court agreed with Wright's assessment, it would not change the fact that Defendants failed to show mitigation, an issue upon which Huffstetler offered no testimony.